Blake WEBER, Plaintiff/Appellant,

v.

Jack MOSES, Individually, and Jefferson
Pilot Life Insurance Company,
Defendants/Appellees.

Supreme Court of Tennessee,
at Jackson.

Dec. 23, 1996.

Gail O. Mathes, The Law Office of Gail O. Mathes, Memphis, for plaintiff/appellant.

Richard H. Allen, Jr., Heather C. Webb, Allen, Scruggs, Sossaman & Thompson, P.C., Memphis, for defendants/appellees.

## OPINION

DROWOTA, Judge.

■ In this appeal, we must determine whether the one-year limitations period for an action under the Tennessee Human Rights Act and for retaliatory discharge should be calculated from the date plaintiff received oral notice of the defendants' decision to terminate his sales manager contract or from the date he was provided written notice of the decision in accordance with his written employment agreement. Based on its determination that the statute of limitations commenced upon the plaintiff's receipt of oral notice, the Court of Appeals affirmed the trial court's dismissal of the action as time-barred.

We agree with the Court of Appeals and conclude that the limitations period commenced when the plaintiff received unequivocal oral notice of the decision to terminate his sales manager contract. Accordingly, the judgment of the Court of Appeals is affirmed.

### BACKGROUND

In August of 1990, plaintiff Blake Weber was hired by defendant Jefferson Pilot Life Insurance Company both as the sales manager for the Memphis office and as an insurance sales agent. Defendant, Jack Moses managed the Memphis office and was Weber's immediate supervisor. Before beginning his employment, Weber entered into a sales manager contract with Jefferson Pilot. Paragraph 7 of the contract was titled "Termination," and provided in pertinent part that "[t]his contract may be terminated on written notice by either party . . . ."

In addition to managing the other insurance sales agents in the Memphis office, in his capacity as sales manager, Weber was also responsible for recruiting new agents. Weber interviewed potential recruits, supervised the application process, administered aptitude tests, and upon completion of the process, provided recommendations to his superiors regarding the applicants' qualifications.

In July of 1991, Weber alleges that he was advised by a senior vice-president with Jefferson Pilot not to hire or recommend for employment any black females. When, in the spring of 1992 a black female applied for the position of insurance sales agent, Weber accepted and processed her application. Immediately following submission of her application, Weber asserts that he began experiencing problems within the company.

Following a meeting in Memphis in early August of 1992 with Pat Walden, Jefferson Pilot's regional vice-president, Moses called Weber into his office and told him that Jefferson Pilot had decided to terminate his sales manager contract effective August 31, 1992. Thereafter, in a letter dated August 5, 1992 and addressed to Walden at Jefferson Pilot's home office, Weber requested reconsideration of the termination decision. Walden told Weber in a phone conversation a short time later that Moses had actually made the decision to terminate Weber's sales manager contract. When approached by Weber, Moses admitted that he had made the decision to terminate Weber's contract, and that he had the authority to "take back" or rescind the decision; however, Moses refused to reconsider the decision. As a result, Weber's sales manager contract terminated on August 31, 1992.[1] On or after September

---

1. Weber's employment with Jefferson Pilot was   not terminated. He continued as an insurance

1, 1992, in accordance with his contract, Weber received written notice that his sales manager contract had been terminated.

On August 31, 1993, Weber filed suit against the defendants alleging that his contract was terminated because he refused to follow Jefferson Pilot's policy of excluding black females from employment. Termination of his contract for that reason, Weber alleged, constitutes a discriminatory practice under the Tennessee Human Rights Act, which provides, in pertinent part, as follows:

It shall be a discriminatory practice for a person or for two (2) or more persons: (1) to retaliate or discriminate in any manner against a person because he or she has opposed a practice declared discriminatory by this chapter....

Tenn.Code Ann. § 4–21–301 (1991 Repl. & Supp.1996). Weber also alleged that the illegally motivated termination of his contract constitutes retaliatory discharge under Tenn. Code Ann. § 50–1–304 (1991 Repl. & Supp. 1996), which provides:

(a) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.

(b) As used in this section, "illegal activities" means activities which are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare.

(c) Any employee terminated in violation of subsection (a) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled.

Defendants moved to dismiss the action, alleging that the claims were time-barred because the complaint had been filed on August 31, 1993, beyond the applicable one-year limitations period [2] which had commenced on or before August 5, 1992, when Weber received oral notice that his contract was terminated.

sales agent for approximately two or three months.

Relying upon the contract, Weber argued that the statute did not begin to run until he was given written notice of termination. In an affidavit, Weber stated:

My contract with Jefferson Pilot provided that a termination decision must be in writing. I therefore continued to hope that I would not be terminated until I received written verification of my termination as sales manager. I continued working as a Jefferson Pilot sales manager until August 31, 1992, and did not receive written verification of my termination until after September 1, 1992.

The trial judge granted the defendants' motion and dismissed the action. The Court of Appeals affirmed the dismissal, finding that oral notice of contract termination is sufficient for purposes of the statute of limitations. We granted plaintiff's application for permission to appeal, and for the reasons explained below, now affirm the judgment of the Court of Appeals.

### STANDARD OF REVIEW

The issue presented in this appeal is a question of law raised by the motion to dismiss for failure to timely file within the applicable limitations period. Consequently, taking all allegations of fact in the plaintiff's complaint as true, we review the lower courts' legal conclusions *de novo* with no presumption of correctness. Tenn. R.App. P. 13(d); *Owens v. Truckstops of America*, 915 S.W.2d 420, 424 (Tenn.1996); *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn.1994).

### COMMENCEMENT OF THE STATUTE OF LIMITATIONS

#### A. Tennessee Human Rights Act

An action under the Tennessee Human Rights Act must be "filed in chancery or circuit court within one (1) year after the alleged discriminatory practice ceases...."

2. Tenn.Code Ann. § 4–21–311 (Supp.1996)(Tennessee Human Rights Act);Tenn. Code Ann. § 28–3–104 (1980 Repl. and Supp.1996)(retaliatory discharge).

Tenn.Code Ann. § 4–21–311 (Supp.1996).[3] To answer the question of commencement, therefore, we must first identify the alleged discriminatory practice. Here, Weber alleges that Jefferson Pilot terminated his contract because he opposed and refused to participate in the company's policy of race and sex discrimination, a policy that is unlawful under the Tennessee Human Rights Act. Therefore, he alleges that the decision to terminate his contract constituted a discriminatory practice.

Having identified the discriminatory practice, we must next determine the date on which the discriminatory practice ended. This is the pivotal issue on appeal. Weber argues that the discriminatory practice did not cease until he received *written* notice pursuant to his employment contract. In contrast, the defendants argue that the alleged discriminatory practice, the decision to terminate Weber's contract, was completed and ended in early August when Weber was orally advised by his immediate supervisor.

■ The stated purpose and intent of the Tennessee Human Rights Act is to provide for execution, within Tennessee, of the policies embodied in the analogous federal anti-discrimination laws. Tenn.Code Ann. § 4–21–101(a)(1) (1991 Repl.). Consequently, as we have previously held, it is appropriate to examine federal law when analyzing issues under the Tennessee Human Rights Act. *Bennett v. Steiner–Liff Iron and Metal Co.*, 826 S.W.2d 119, 121 (Tenn.1992).

In this case, we begin our analysis of the question of what constitutes cessation of the alleged discriminatory practice with two United States Supreme Court decisions which addressed the commencement of the limitations period in employment discharge actions. In *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), a faculty member alleged that he had been denied academic tenure because of his national origin. In February, 1973, the faculty tenure committee recommended that Ricks not receive a tenured position. The tenure committee, however, agreed to reconsider its decision the following year. Upon reconsideration in February, 1974, the committee adhered to its earlier recommendation, and on March 13, 1974, the Board of Trustees formally voted to deny tenure to Ricks.

Dissatisfied with the decision, Ricks immediately filed a grievance with the Board's grievance committee, which in May of 1974 held a hearing and took the matter under advisement. During the pendency of the matter, the College administration continued to plan for Ricks' eventual termination. Ricks was not immediately terminated, however, but was instead, on June 26, 1974, offered a "terminal" contract to teach one additional year, with the contract expiring on June 30, 1975. Ricks accepted the contract in September of 1974. Shortly thereafter, on September 12, Ricks was notified that his grievance had been denied.

Ricks filed suit on September 9, 1977. A three-year statute of limitations applied and the issue addressed by the United States Supreme Court was when did Ricks' cause of action accrue. If the relevant statute of limitations commenced, as Ricks claimed, on the expiration of the terminal contract, then his suit would have been timely filed; however, if the limitations period commenced on notification of the denial of tenure, the suit would have been time-barred.

As did we in this appeal, the *Ricks'* Court, first identified "precisely the unlawful employment practice of which the plaintiff complains." *Id.*, 449 U.S. at 257, 101 S.Ct. at 503. The Court concluded that it was the decision to deny tenure which had allegedly been influenced by an impermissible factor. According to the Court, because Ricks, on learning of the denial of tenure had notice of all the allegedly wrongful acts that he later sought to challenge, the statute of limitations was deemed to commence at that time. *Id.*, 449 U.S. at 258, 101 S.Ct. at 504. The Court stressed that the termination of Ricks' employment was not an independent discrimina-

---

**3.** This Court has not previously addressed the Tennessee Human Rights Act statute of limitations which became effective May 22, 1992. Prior to that time, the general one-year tort statute of limitations governed claims under the Act. *Spicer v. Beaman Bottling Co.*, 937 S.W.2d 884 (Tenn.1996).

tory act, but merely the "delayed, but inevitable, consequence of the denial of tenure." *Id.*, 449 U.S. at 257–58, 101 S.Ct. at 504. The Court emphasized that "[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most painful." *Id.*, 449 U.S. at 258, 101 S.Ct. at 504. "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.*, 449 U.S. at 257, 101 S.Ct. at 504. Therefore, the Court found that the limitations period commenced to run when the tenure decision was made and Ricks was notified. Identifying the latest possible triggering date as June 26, 1974, when Ricks was offered the "terminal" contract, the Court held the action was time-barred.

Significantly, the Court in *Ricks* rejected the arguments of the Equal Employment Opportunity Commission in an *amicus curiae* brief, that the tenure decision was not made until September 12, 1974, when Ricks was notified that his grievance had been denied, or in the alternative, that the pending grievance tolled the statute of limitations. The Court stated:

We do not find either argument to be persuasive. As to the former, we think that the Board of Trustees had made clear well before September 12 that it had formally rejected Ricks' tenure bid. The June 26 letter itself characterized that as the Board's "official position." It is apparent, of course that the Board in the June 26 letter indicated a willingness to change its prior decision if Ricks' grievance were found to be meritorious. But entertaining a grievance complaining of the tenure decision does not suggest that the earlier decision was in any respect tentative. The grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made.

As to the latter argument, we already have held that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods. The existence of careful procedures to assure fairness in the tenure decision should not obscure the principle that limitations periods normally commence when the employer's decision is made.

*Id.*, 449 U.S. at 261, 101 S.Ct. at 505 (footnotes and internal citations omitted)(emphasis in original).

In *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), the Court applied the *Ricks* analysis in holding that suits challenging politically-motivated firings brought under 42 U.S.C. § 1983 were time-barred because of a failure to file within the one-year limitations period. In that case, plaintiffs, administrators in the Puerto Rico Department of Education, were notified that their appointments would terminate on a specified date in the future. *Id.*, 454 U.S. at 7, 102 S.Ct. at 28. On filing the cause of action after termination, the employees contended that the limitations period should begin to run on the date of their termination from employment, rather than the date on which they were notified of the employer's termination decision.

In ruling that the plaintiffs' actions, brought more than one-year after receipt of the notice of termination were time-barred, the Court reiterated its holding in *Ricks* "that the proper focus is on the time of the *discriminatory act* not the point at which the *consequences* of the act become painful." *Id.*, 454 U.S. at 8, 102 S.Ct. at 29 (emphasis in original). The Court pointed out that the discriminatory practice challenged was not the termination of employment, but the decision of the employer to terminate employment for political reasons. Therefore, the Court found *Ricks* indistinguishable from *Chardon* because "in each case, the operative decision was made—and notice given—in advance of a designated date on which employment terminated." *Chardon*, 454 U.S. at 9, 102 S.Ct. at 29.

■ Therefore, under the *Ricks/Chardon* analysis,[4] a discriminatory termination ceases

4. The statute of limitations also adopts the "continuing violation exception" which we judicially adopted and explained fully in *Spicer, supra.*

and is complete, when the plaintiff is given unequivocal notice of the employer's termination decision, even if employment does not cease until a designated date in the future. *See also, Shell v. State,* 893 S.W.2d 416, 422 (Tenn.1995) (an action for the negligent deprivation of a constitutional right accrues at the time of the alleged wrongful conduct, not when the results of the wrongful conduct cease to have an effect on the plaintiff); *Webster v. Tennessee Board of Regents,* 902 S.W.2d 412 (Tenn.App.1995)(one-year limitations period began to run when university administrator was given notice that he would be terminated from his employment, rather than the date on which the administrator's contract for services ended); *Janikowski v. Bendix Corp.,* 823 F.2d 945, 947 (6th Cir. 1987)(a plaintiff's cause of action accrues when he receives a notice of termination, not when his employment actually ceases); *Price v. Litton Business Sys., Inc.,* 694 F.2d 963 (4th Cir.1982)(plaintiff's claim began to run when he was told he would be relieved of his position rather than when he finally left the company).

To avoid the preclusive effect of the *Ricks* and *Chardon* analysis, Weber argues that the oral notification he received was not definite and final. He urges that he was not unequivocally informed by a duly authorized representative that Jefferson Pilot had decided to terminate his contract until he received the written notice on September 1, 1992. Regardless of the clarity of the oral notice, Weber also claims that his written employment agreement mandating written notice of termination, also controls the mode of notice necessary to trigger the limitations period.

■ We find both arguments unpersuasive. In a letter dated August 5, 1992 and addressed to Walden, a regional vice-president at Jefferson Pilot's home office, Weber requests that Jefferson Pilot "reconsider

your decision to terminate my Sales Manager contract." By his own words, Weber revealed his awareness that Jefferson Pilot *previously* had decided to terminate his sales manager contract. Moreover, in his affidavit filed in this cause, Weber stated that "I, therefore, continued to *hope* that I would not be terminated until I received written *verification* of my termination as sales manager." (Emphasis added.) Again, by his own words, Weber has admitted that he was aware of Jefferson Pilot's decision and only hoped that it would be changed. An employee's hope for rehire, transfer, promotion, or a continuing employment relationship cannot toll the statute of limitations absent some employer conduct likely to mislead an employee into sleeping on his rights. *Price,* 694 F.2d at 965. There is no evidence to show that Weber was misinformed or mislead about the finality of Jefferson Pilot's termination decision.[5] Indeed Weber's understanding of the finality of the decision is unmistakable from his use of the phrase, "written verification of my termination," in his affidavit. The term "verification" is defined as "confirmation of correctness, truth or authenticity." *Black's Law Dictionary* 1400 (5th ed.1979). Certainly a decision can not be confirmed if it has not already been made.

■ Moreover, under *Ricks,* the existence of a grievance procedure does not change the principle that the statute of limitations begins to run when the termination decision is made. *Id.,* 449 U.S. at 261, 101 S.Ct. at 505; *see also Kessler v. Board of Regents,* 738 F.2d 751, 754 (6th Cir.1984). Likewise the existence of a written contract of employment designating the method by which the *contract* may be terminated is not relevant to calculating the date on which the statute of limitations commenced.[6] *See Jones v. Baskin, Flaherty, Elliot and Mannino,* 738 F.Supp. 937, 939 (W.D.Pa.1989)(plaintiff can not claim that he

---

5. Weber also urges this Court in his brief to apply the principles of equitable tolling and/or equitable estoppel to hold that his action is timely. That argument is without merit. Tennessee law does not recognize the doctrine of equitable tolling. *Norton v. .Everhart,* 895 S.W.2d 317, 321 (Tenn.1995). Weber's claim of equitable estoppel was raised for the first time in this Court and is not supported by any allegations in the record.

6. Contrary to Weber's argument, the contract provision in this case did not attempt to define notice for purposes of triggering the statute of limitations for statutory or common law tort actions arising from termination of the contract. We, therefore, express no opinion on the validity or effect of such provisions.

was not aware of the alleged discrimination even though he did not receive written notice of his termination sixty days in advance and have his termination ratified by eighty percent of the Board of Directors as required by the shareholder and employment agreement); *cf. Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284 (7th Cir.1986) (a letter designating a future date on which plaintiff would be terminated does not change the fact that plaintiff had previously received unequivocal notice of termination which triggered the statute of limitations). Acceptance of Weber's argument would inject uncertainty into tort law and defeat the purposes of statutes of limitations which are designed to ensure fairness, prevent undue delay, and preserve evidence from the dangers inherent in the passage of time. *Potts v. Celotex Corp.*, 796 S.W.2d 678, 681 (Tenn.1990); *see generally Developments in the Law: Statutes of Limitations*, 63 Harv.L.Rev. 1176, 1185 (1950).

Applying the *Ricks/Chardon* analysis to the facts in this case, we conclude that the limitations period began to run, at the latest, on August 5, 1992 when Weber knew of the defendants' decision to terminate his contract. Accordingly, Weber's claim under the Tennessee Human Rights Act, filed on August 31, 1993, is time-barred by the one-year limitations period.

### B. Retaliatory Discharge

■ Likewise, the statute of limitations precludes Weber's retaliatory discharge claim. A claim for retaliatory discharge is a tort action which is governed by the general tort statute of limitations which requires that a lawsuit be "commenced within one (1) year after the cause of action accrued...." Tenn. Code Ann. § 28–3–104 (1980 Repl. and Supp. 1996); *Headrick v. Union Carbide Corp.*, 825 S.W.2d 424 (Tenn.App.1991); *cf. Van Cleave v. McKee Baking Co.*, 712 S.W.2d 94 (Tenn. 1986).

■ It is well-established that a tort action accrues when the plaintiff knows, or in the exercise of reasonable care and diligence should know, that an injury has been sustained. *Wyatt v. A–Best, Co., Inc.*, 910 S.W.2d 851, 854 (Tenn.1995). While a pre-requisite to the running of the statute of limitations is plaintiff's reasonable knowledge that an injury has been sustained, a plaintiff is not entitled to delay filing until all injurious effects or consequences of the actionable wrong are fully known. *Id.* at 855.

Weber sustained the injury he now alleges when Jefferson Pilot decided to terminate his sales manager contract effective August 31, 1992. Moreover, he became aware of the injury when he was orally advised in early August of Jefferson Pilot's decision. Actual termination of the contract is nothing more than the consequence of Jefferson Pilot's earlier decision. The statute of limitations, therefore, precludes Weber's retaliatory discharge claim.

### CONCLUSION

We conclude that the one-year limitations period for Weber's claims of discriminatory practice and retaliatory discharge commenced when he received oral notice in early August of Jefferson Pilot's decision to terminate his sales manager contract. Therefore, Weber's complaint, filed more than one-year after the date on which he received oral notice of Jefferson Pilot's termination decision is time-barred. Accordingly, the Court of Appeals' affirmance of the trial court's dismissal of Weber's action is affirmed. Costs of this appeal are taxed to the plaintiff, Blake Weber, for which execution may issue if necessary.

BIRCH, C.J., and ANDERSON and REID, JJ., concur.