IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

# MARTIN PASCHALL v. HENRY COUNTY BOARD OF EDUCATION

**Direct Appeal from the Chancery Court for Henry County**
**No. 17192   Ron E. Harmon, Chancellor**

---

**No. W1999-0070-COA-R3-CV - Decided June 2, 2000**

---

This is an employment discrimination case. The plaintiff is a white teacher who was disciplined for his role in an altercation with a black teacher. The plaintiff sued the county school board for discrimination, alleging that he was disciplined because of his race, in violation of the Tennessee Human Rights Act. The trial court granted the school board's motion for summary judgment. The plaintiff appeals. We reverse and remand, finding that the plaintiff has proffered direct evidence of discriminatory intent.

**Tenn. R. App. P. 3; Judgment of the Chancery Court is Reversed and Remanded.**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Scott F. May, Memphis, Tennessee, for the Appellant, Martin Paschall.

P. Allen Phillips and Andrew V. Sellers, Jackson, Tennessee, for the Appellee, Henry County Board of Education.

**OPINION**

Plaintiff/Appellant Martin Paschall ("Paschall") is a white employee of Defendant/Appellee Henry County Board of Education ("the Board"). Paschall is employed as band director at Henry County High School and at Grove Middle School. On the afternoon of Friday, December 9, 1994, Paschall returned to the high school from teaching at the middle school to discover that Henry County High School Chorale Director Kenneth Humphreys ("Humphreys"), a black employee, had taken sound equipment from Paschall's band room. Paschall confronted Humphreys, demanding, "What's going on?" Paschall told Humphreys that he needed the equipment for a rehearsal for his band class, which was about to start. Humphreys refused to let Paschall have the equipment. Humphreys told Paschall that the vice-principal had asked Humphreys to set up the public address system for that evening's basketball game, and that if Paschall wanted to use the equipment, he needed to get the vice-principal's permission. A heated argument between the two men ensued. Eventually Humphreys told Paschall that he was going to "whip him." In response, Paschall moved

so that he was standing directly in front of Humphreys, close to his face, and replied "Take your best shot." Humphreys did nothing, and after a few seconds Paschall turned to walk out of the room. As Paschall was walking away, Humphreys picked up and swung a metal chair at Paschall, striking Paschall in the head and torso, and knocking him to the ground unconscious.

That afternoon, Humphreys was arrested and charged with aggravated assault. Later that night, Humphreys was suspended by Henry County School Superintendent William Atchison ("Atchison"). Humphreys later pled guilty to simple assault.

While the facts regarding the assault are essentially undisputed, some of the subsequent events are in dispute. In pleadings filed with the trial court, Paschall states that Atchison first contacted him by telephone on December 9, the evening of the incident. At the time, Paschall was in the dentist's office receiving emergency dental treatment for the injuries to his mouth and teeth caused by the assault. Paschall asserts that during that telephone conversation, Atchison told him that he would not be suspended for his part in the altercation. Paschall states that Atchison visited him at his home the next day, where he read the police report of the assault. Paschall states that after reading the police report, Atchison once again told him that he would not be disciplined, and that he could return to school to teach on Monday.

On Monday, Paschall was called from his classroom to Atchison's office at the high school, where Principal John Hinson ("Hinson") and Atchison were waiting to talk to him. During that meeting, according to Paschall, Atchison told him that since their initial conversations on the matter, he had received a phone call from a "black man," and that Hinson had received "several" phone calls from black citizens, and that they were now going to have to suspend Paschall in order to "take the hot air out of the situation." Paschall alleges that Atchison told him that they wanted to avoid the appearance of giving preferential treatment to a white teacher. Paschall asserts that both Atchison and Hinson assured him that the suspension was a "mere formality" designed to "defuse" the situation, that the Board would not uphold it, and that he would not lose "one cent" of salary.

On December 29, 1994, the Board met to consider charges of "unprofessional conduct," brought by Superintendent Atchison, against Paschall and Humphreys. At the meeting, the Board voted to certify the charge against Paschall, but took no action regarding the charge against Humphreys. The Board accepted Atchison's recommendation that Paschall's punishment be limited to the four day suspension without pay that he had already served. Paschall alleges that Board chairman Gerald Young ("Young") later told him that he felt so terrible about the outcome of the Board meeting that he had considered resigning from the Board. Paschall asserts that Young told him that if Paschall had been the one to hit Humphreys, the Board would have fired Paschall, and that it was only because of Humphreys' race that he was treated differently.

On January 5, 1995, the Board met again. This meeting was to consider the charge of unprofessional conduct that Atchison had lodged against Humphreys. At this meeting, the Board certified the charge of unprofessional conduct against Humphreys. Atchison recommended that Humphreys be suspended, without pay, for the remainder of the school semester. The Board chose

a shorter suspension, voting to suspend Humphreys for six weeks without pay.

Paschall requested a hearing from the Board regarding the charge certified against him, pursuant to Board procedure. The Board granted his request, holding a hearing on March 4, 1995. At the conclusion of that hearing, the Board voted to affirm its December 29, 1994 action, affirming the four day suspension without pay imposed on Paschall.

On March 11, 1996, Paschall filed a lawsuit in Chancery Court against the Board. The lawsuit alleged racial discrimination, asserting claims under the Tennessee Human Rights Act, Tennessee Code Annotated § 4-21-101 *et. seq*, ("THRA"). An amended complaint was later filed. In his lawsuit, Paschall alleged that the Board's decision to discipline him was based on his race. Paschall asserted that if he were black, or if Humphreys were white, he would not have been disciplined. Paschall contends that the Board disciplined him only because it wanted to discipline Humphreys, and was afraid of the reaction from the black community if it punished the black teacher involved in the incident without punishing the white teacher involved.

In its answer to the complaint, the Board denied that Paschall's race was a factor in its decision to discipline him. On November 23, 1998, the Board filed a motion for summary judgment, arguing that there was no genuine issue of material fact, and that it was entitled to judgment as a matter of law. The trial court held a hearing on the Board's motion on February 22, 1999. At the hearing, the Board asserted that Paschall was disciplined for arguing with Humphreys, and that Paschall's race had played no role in the Board's decision to certify the charge of unprofessional conduct against him, or to uphold the four day suspension without pay that Atchison had imposed. The Board argued that the alleged statements by Atchison, Hinson and Young, made outside the deliberation process of the Board, were not indicative of the motivations of the Board, and therefore, did not constitute evidence of discriminatory intent on the part of the Board.

At the summary judgment hearing, the trial court indicated that Atchison's and Hinson's alleged explanation for Paschall's suspension were remarks made by individuals outside the Board's decision making process, and that consequently they could not be considered evidence of a discriminatory motive on the part of the Board. The trial court characterized Chairman Young's statement as purely hypothetical and speculative, made after the Board had already acted, which also did not reflect the motivations of the Board. On March 12, 1999, the trial court issued an order granting the Board's motion for summary judgment. From this order, Paschall now appeals.

Paschall argues that the trial court erred in granting summary judgment to the Board. Paschall asserts that the statements allegedly made by Atchison, Hinson and Young constitute evidence that the Board's decision to discipline him was motivated, at least in part, by considerations of race. Paschall contends that the Board's assertion that race played no factor in its decision, made only in its unsworn answer to the complaint, is insufficient to support a motion for summary judgment. The Board argues that the statements allegedly made by Atchison and Hinson were made by individuals who did not vote to certify the charge against Paschall, and therefore cannot be evidence of discriminatory motive on the part of the Board, the body that actually took the protested

action.

We review the trial court's grant of summary judgment *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997). Summary judgment is appropriate only when the party applying for summary judgment demonstrates that there are no genuine issues of material fact, and that it is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. To determine whether the moving party is entitled to summary judgment, we must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all inferences in favor of that party, and discard all countervailing evidence. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). If there is then any dispute as to any material fact, or any doubt as to the conclusions to be drawn from that fact, summary judgment must be denied. *Smith v. Bridgestone /Firestone Inc.*, 2 S.W.3d 197, 200 (Tenn. Ct. App. 1999).

Paschall's claim of discrimination is brought under the THRA. Like its federal counterpart, Title VII of the Civil Rights Act of 1964, 42 United States Code Annotated § 2000 (e) *et seq.*, the THRA prohibits an employer from taking adverse action against an employee based on his or her race. Therefore, Tennessee courts considering claims under the THRA look to cases interpreting the federal discrimination statutes. *See Weber v. Moses*, 938 S.W.2d 387, 390 (Tenn. 1996); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996).

A plaintiff asserting a claim of disparate treatment, or intentional discrimination based on race, can proceed to trial either by offering direct evidence that the employer's action was motivated by race, or by presenting circumstantial evidence sufficient to raise an inference of discrimination. Since direct evidence of an employer's discriminatory intent is seldom available, most plaintiffs must proceed by offering circumstantial evidence that creates an inference of discrimination, under the shifting burden of production framework developed by the Supreme Court in *McDonnell-Douglas Corp v. Green*, 411 U.S. 792 (U.S. 1973). *Kline v. Tenn. Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997).

This burden-shifting is only necessary, however, in cases in which the plaintiff is unable to offer direct evidence of the employer's discriminatory motive. *Kline*, 128 F.3d at 348. Where the plaintiff has direct evidence to support his claim of discrimination, the McDonnell Douglas analysis is inapplicable. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998); *Kline*, 128 F.3d at 348. "The direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both. If a plaintiff can produce direct evidence of discrimination then the McDonnell-Douglas-Burdine paradigm is of no consequence." *Kline*, 128 F.3d at 348. In a case in which a plaintiff has direct evidence of discrimination, rather than proceed through the steps of the McDonnell-Douglas burden shifting, "the case must proceed to trial for a determination of whether the proffered evidence is credible; . . ." *Yetts v. ITW-NIFCO, Inc.* 50 F. Supp. 2d 776, 783 (S.D. Ohio 1999).

Direct evidence is defined by Tennessee Courts as "evidence that 'proves a fact, or group of

facts, without an inference, and which in itself, if true, conclusively establishes that fact.'" ***Brenner v. Textron Aerostructures***, 874 S.W.2d 579, 585 (Tenn. App. 1993) (quoting ***Otis v. Cambridge Mut. Fire Ins. Co.***, 850 S.W.2d 439, 445 (Tenn. 1992)). Circumstantial evidence, on the other hand, is evidence which " 'proves a fact from which an inference of the existence of another fact may be drawn.' " ***Id.*** (quoting ***Otis***, 850 S.W.2d at 445). ***Spann v. Abraham***, No. M1996-00003-COA-R3-CV, 1999 WL 1000897 (Tenn. Ct. App. Nov. 5, 1999), describes the difference between direct and circumstantial evidence in an intentional discrimination case:

> Direct evidence of intentional discrimination includes an acknowledgment by an employer of discriminatory intent. Circumstantial evidence of discrimination includes ambiguous statements, suspicious timing, instances in which similarly situated . . . employees received systematically better treatment.

***Id.*** at * 7. In this case, Atchison allegedly told Paschall that he would have to be disciplined in order to "let the hot air" out of what had turned into a racially charged issue in the community. This is an acknowledgment that race was considered by Atchison. Likewise, comments by Atchison and Hinson that the suspension was a "mere formality" designed to "defuse" the racially charged situation are direct evidence of their discriminatory intent. Young's comments could be interpreted as a reference to the Board's motive in its earlier actions against Humphreys and Paschall.

The trial court found that the statements made to Paschall by Atchison, Hinson and Young did not constitute either direct or indirect evidence of discrimination because they were not made by Board members during the course of the Board's deliberations prior to its vote to certify the charge against Paschall. However, a discriminatory statement need not have been made by the ultimate decision maker in order to constitute evidence of an employer's discriminatory intent. ***Wells v. New Cherokee Corp.***, 58 F.3d 233 (6th Cir. 1995); ***McIntosh v. Stanley-Bostitch, Inc.***, 82 F. Supp.2d 775, 783 (S.D. Ohio 2000); ***Williams v. United Dairy Farmers***, 20 F.Supp.2d 1193, 1200 (S.D.Ohio 1998).

In ***Wells v. New Cherokee Corp.***, 58 F.3d 233 (6th Cir. 1995) the Sixth Circuit Court of Appeals held that evidence of an employer's discrimination includes not just discriminatory statements by those individuals with the ultimate authority to take the adverse employment action, but also discriminatory statements "made by those individuals who are in fact meaningfully involved" in that action. ***Id.*** at 238. The court acknowledged that statements by an intermediate supervisor who did not participate in the employment decision would not constitute evidence of discrimination, but distinguished this from statements by a supervisory employee who is "meaningfully involved" in the decision even if he does not make the ultimate decision. ***Id.***

In this case, Atchison clearly was "meaningfully involved" in the Board's action against Paschall. Atchison was the individual who brought the charges of unprofessional conduct against Paschall before the Board. The Board's vote to certify the charges of unprofessional conduct against Paschall would not have occurred had Atchison not brought the charges against Paschall before the Board. Atchison's decision to discipline Paschall was the first step in the Board's decision making

5

process. Likewise, Hinson was involved in the initial decision to suspend Paschall, so comments made by him that the suspension was a "mere formality" designed to "defuse" the racially charged situation are evidence of discrimination. *See id; see also McIntosh v. Stanley-Bostitch, Inc.*, 82 F. Supp.2d 775, 783 (S.D. Ohio 2000)(holding that supervisor's discriminatory comment constituted direct evidence of discrimination, even though supervisor was not one who fired employee, because supervisor was directly involved in the decision making process); and *Williams v. United Dairy Farmers*, 20 F.Supp.2d 1193, 1200 (S.D.Ohio 1998)(holding that discriminatory remarks made by intermediate level supervisor were relevant probative evidence of employer's discrimination because the supervisor, who had created the record upon which the decision maker based his decision to terminate, was "meaningfully involved" in termination decision). Moreover, the comments by Young, a Board member, could be construed as not a mere hypothetical but rather a reference to the actions of the Board in disciplining Paschall and an indication of the Board's consideration of race in its decision making. Therefore, the comments allegedly made by Atchison, Hinson and Young must be considered direct evidence that race was a factor in the decision to suspend Paschall.

Consequently, we find that Paschall presented sufficient evidence of discrimination to survive the Board's motion for summary judgment. The trial court's grant of the Board's motion for summary judgment must be reversed and the cause remanded for further proceedings.

The decision of the trial court is reversed, and the case is remanded for further proceedings consistent with this Opinion. Costs on appeal are taxed to the Appellee, Henry County Board of Education, for which execution may issue, if necessary.

**HOLLY KIRBY LILLARD, J.**
**W. FRANK CRAWFORD, P. J., W.S.**
**ALAN E. HIGHERS, J.**