**Helen L. HOWARD, Plaintiff–Appellant,**

v.

**UNITED PARCEL SERVICE, INC., Defendant–Appellee.**

No. 01–5296.

United States Court of Appeals, Sixth Circuit.

Oct. 15, 2002.

Before SILER, COLE, and CLAY, Circuit Judges.

SILER, Circuit Judge.

Helen L. Howard filed this action against her long-time employer, United Parcel Service, Inc. ("UPS"), alleging claims of discrimination under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4–21–101 *et seq.*, and a claim of retaliation for filing a workers' compensation claim under Tennessee common law. Specifically, she challenges UPS's decision to offer her reinstatement to her former position as a feeder driver rather than temporary alternate work after she suffered an on-the-job injury. She now appeals from the district court's grant of summary judgment in favor of UPS on her gender discrimination and workers' compensation retaliation claims.[1] Because

1. Howard conceded that she failed to state a claim for age discrimination.

Howard's claims are time-barred, we AF-FIRM.

## FACTUAL BACKGROUND

Helen Howard began working for UPS in 1981. She obtained a full-time position as a feeder (tractor-trailer) driver in 1991. The feeder driver position requires the employee to lift a minimum of seventy pounds when hooking up the trailers.

On November 8, 1996, Howard was involved in an on-the-job accident in which she sustained injuries to her head, right shoulder, neck, and back. Within a few days of the accident, she was informed that her injury would be covered under workers' compensation, and she received benefits for between six and nine months without filing a claim.

In the months following the accident, Howard underwent treatment from several doctors. She initially sought treatment from Dr. Stephen Natelson, who was not a panel physician regularly used for UPS cases by Liberty Mutual, UPS's workers' compensation insurer ("panel physician"). Howard was then referred to four other doctors, all of whom were panel physicians. Not one of the four panel physicians ever assigned her any restrictions. One panel physician, Dr. Howard Brown, released Howard to return to her regular job duties with no restrictions, while another, Dr. Merrill White, expressly noted that he saw no reason to assign limitations.

Subsequently, Howard went back to Dr. Natelson. On June 2, 1997, Dr. Natelson released her to return to work but recommended that she be restricted to lifting twenty-five pounds. After Dr. Natelson released her, Howard returned to UPS and worked a few days as a washer/fueler at the direction of her feeder supervisor.

In June 1997, Jennifer Molyneaux, occupational safety supervisor for UPS's Tennessee district, realized that Howard had been released to return to work without any restrictions by Drs. Brown and White. She concluded that Howard was able to return to her position as a feeder driver and that the collective bargaining agreement between UPS and her union ("Union") prevented UPS from placing Howard in a temporary alternate work position. Molyneaux instructed Howard's supervisor accordingly. UPS then offered Howard reinstatement to her former position as a feeder driver.

Howard disagreed with the panel physicians' conclusions and refused to return to her former job as a feeder driver because of the position's lifting requirement. Without UPS's approval, Howard sought the opinions of physicians not on the workers' compensation panel for UPS cases and obtained restrictions conflicting with the prior complete releases from the panel physicians.

When UPS would not alter its decision to follow the panel physicians over those she chose, Howard took several courses of action. She complained to the Tennessee Department of Labor, filed a grievance with the Union, and filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In her EEOC charge, she alleged that UPS denied her temporary alternate work due to either her gender or disability. On June 30, 1998, the EEOC issued a right-to-sue letter.

On May 11, 1998, Howard filed a complaint against UPS challenging the discontinuation of her workers' compensation benefits. On March 3, 1999, the state court determined that Howard sustained a permanent partial disability of forty percent to the body as a whole and a medical impairment of eleven percent to the body as a whole.

Howard filed this action in state court on March 13, 2000. Three months later, in June 2000, she returned to her job at UPS as a feeder driver.

## STANDARD OF REVIEW

The district court's grant of summary judgment is reviewed *de novo*. *Newman v. Fed. Express Corp.*, 266 F.3d 401, 404 (6th Cir.2001). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

## DISCUSSION

1. Whether Howard's gender discrimination claim is barred by the statute of limitations.

An action under the THRA must be brought "within one (1) year after the alleged discriminatory practice ceases." Tenn.Code Ann. § 4–21–311(d). Howard filed her complaint in this action on March 13, 2000. Therefore, her gender discrimination claim is barred if it accrued before March 13, 1999.

The first step in determining whether Howard's claim is timely is identifying the alleged discriminatory practice. *Weber v. Moses*, 938 S.W.2d 387, 390 (Tenn.1996). Howard challenges UPS's decision to offer her reinstatement to her former position as a feeder driver rather than temporary alternate work, claiming that UPS treated male drivers more favorably by providing them with temporary alternate work.

Having identified the discriminatory practice, we must next determine the date on which the discriminatory practice ended. *Id.* In determining when a discriminatory practice ends, the Tennessee Supreme Court has adopted the Supreme Court's analysis in *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981). *See Weber*, 938 S.W.2d at 390–91. Under this analysis, "a discriminatory [practice] ceases and is complete, when the plaintiff is given unequivocal notice of the employer's ... decision." *Id.* at 391–92.

■ The issue, then, is when did Howard receive "unequivocal notice" of UPS's decision not to provide her with temporary alternate work. In or around June 1997, Howard's supervisor informed her that she would be offered full reinstatement to her former job as a feeder driver rather than temporary alternate work. On January 23, 1998, Howard filed a grievance with the Union seeking an alternate position, by which time she admittedly felt that she had been wronged. On March 4, 1998, Howard filed a charge of discrimination with the EEOC. Howard acknowledges that she filed her EEOC charge because she felt that she had been wronged and that at the time she filed her charge, UPS "had told [her] that they weren't going to accommodate [her] in anyway." Accordingly, Howard had "unequivocal notice" of UPS's decision, at the earliest, in June 1997 when her supervisor informed her that she would be offered her former position and not temporary alternate work and, at the latest, on March 4, 1998, when she filed her EEOC charge—more than two years prior to the filing of her complaint.

Howard asserts that her gender discrimination claim did not accrue until February 3, 2000, when Ed Finley, UPS's labor relations manager, unequivocally told Jimmy Miller, the Union's vice president and business agent, that UPS would not provide Howard with temporary alternate work.

Finley's statement, however, was made in the course of the grievance negotiations between UPS and the Union. Miller negotiated with UPS on Howard's behalf after she filed her grievance in January 1998. In a letter to Miller dated October 4, 1999, Finley discussed the possibility of accommodating Howard's request for an alternate position in order to resolve her grievance. Subsequently, on February 2, 2000, Finley told Miller that UPS would not agree to make an accommodation.

In *Ricks,* the Supreme Court rejected the argument that a discrimination claim accrues and the statute of limitations begins to run when the employee receives notice that his or her grievance has been denied. *Ricks,* 449 U.S. at 260–61, 101 S.Ct. 498. The Supreme Court held that "entertaining a grievance complaining of the ... decision does not suggest that the earlier decision was in any respect tentative. The grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made." *Id.* at 261, 101 S.Ct. 498. Accordingly, Finley's statements made in the context of grievance negotiations with the Union neither render UPS's prior decision ambiguous or uncertain nor affect in any way when Howard received "unequivocal notice" of that decision.

Next, Howard argues that her gender discrimination claim could not have accrued until after the decision in her workers' compensation case on March 3, 1999, which "unequivocally establish[ed] her] right to alternate work." Howard's argument fails for two reasons. First, in her EEOC charge filed on March 4, 1998, Howard noted that "the company stands firm in saying they will not accommodate me," demonstrating that she had received "unequivocal notice" of UPS's decision at that time. Therefore, the workers' compensation decision one year later is imma-

terial. Second, the workers' compensation decision on March 3, 1999, is outside the one-year statute of limitations, as Howard filed her complaint on March 13, 2000.

Finally, Howard asserts that her gender discrimination claim falls within the continuing violation doctrine. The continuing violation doctrine "relieves a plaintiff from the burden of proving that the entire violation occurred within the limitations period" and requires that the plaintiff "show a series of related acts, one or more of which falls within the limitations period." *Spicer v. Beaman Bottling Co.,* 937 S.W.2d 884, 889 (Tenn.1996). The doctrine applies in only two narrowly limited instances: (1) "where there is some evidence of *present* discriminatory activity giving rise to a claim of a continuing violation," and (2) "where there has been a longstanding and demonstrable policy of discrimination." *Id.* at 889.

In determining "whether the discriminatory conduct amounts to a continuing violation or whether it is merely discrete, isolated, and completed acts which are individual violations," the Tennessee Supreme Court has applied three factors: (1) subject matter, (2) frequency, and (3) degree of permanence. *Id.* at 890. Under the third and most important factor, degree of permanence, the court asks: "Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?" *Id.* Here, UPS's decision to offer Howard her former position rather than temporary alternate work not only should have triggered her "awareness of and duty to assert" her rights, it in fact did. Having already filed a grievance with the Union,

Howard filed an EEOC charge stating that "the company stands firm in saying they will not accommodate me." Howard's EEOC charge was filed on March 4, 1998, more than two years before this case was filed. As such, UPS's decision not to offer Howard temporary alternate work constitutes a discrete, individual act to which the continuing violation theory does not apply. Furthermore, Howard's allegations that UPS repeatedly failed to honor her requests for temporary alternate work do not amount to a continuing violation. *See EEOC v. McCall Printing Corp.*, 633 F.2d 1232, 1237 (6th Cir.1980) ("Repeated requests for further relief from a prior act of discrimination will not set the time limitations running anew.").

Howard received "unequivocal notice" of UPS's decision not to provide her with temporary alternate work, at the earliest, in June 1997 when her supervisor notified her of the decision and, at the latest, on March 4, 1998, when she filed a charge of discrimination with the EEOC. Therefore, her gender discrimination claim accrued prior to March 13, 1999, and is barred by the THRA's one-year statute of limitations.

2.  Whether Howard's workers' compensation retaliation claim is time-barred.

A retaliation claim based on an employee's exercise of her workers' compensation rights is subject to a one-year statute of limitations. *Headrick v. Union Carbide Corp.*, 825 S.W.2d 424, 426 (Tenn.Ct.App. 1991). Howard contends that her retaliation claim did not accrue until after the state court's determination in the worker's compensation case on March 3, 1999, and that UPS continued to retaliate against her subsequent to the filing of the instant action by filing a motion to reduce the workers' compensation award on October 23, 2000.

In support of her workers' compensation retaliation claim, Howard alleges that UPS retaliated against her by offering her the position of feeder driver rather than providing her with temporary alternate work. Because this is the identical employment decision she challenges in her gender discrimination claim, her workers' compensation retaliation claim accrued before March 13, 1999, and is barred by the one-year statute of limitations for the same reasons her gender discrimination claim is time-barred.

AFFIRMED.