# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
October 5, 2005 Session

## PAULA P. KING BOOKER v. THE BOEING COMPANY, d/b/a BOEING-OAK RIDGE COMPANY

**Rule 23 Certified Question of Law**
**United States District Court for the Eastern District of Tennessee**
**No. 3:01-CV-275     Thomas W. Phillips, Judge**

---

**No. M2005-00832-SC-R23-CQ - Filed April 19, 2006**

---

We accepted a question certified to this Court from the United States District Court for the Eastern District of Tennessee to clarify the operation of the statute of limitations for discriminatory pay claims under the Tennessee Human Rights Act. After considering the arguments of the parties and the applicable authority, we hold that a claim of discriminatory pay may be brought at any time within one year that a plaintiff has received discriminatory pay and that backpay is available for the duration of the unequal pay.

### Tenn. Sup. Ct. R. 23 Certified Question of Law

E. RILEY ANDERSON, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and CORNELIA A. CLARK, JJ., joined.

David R. Wigler, Knoxville, Tennessee, for the Appellant, Paula P. King Booker.

E. H. Rayson and John C. Burgin, Jr., Knoxville, Tennessee, for the Appellee, The Boeing Company.

### OPINION

#### Background

The facts as stated in the federal district court's certification order include the following. Plaintiff Paula P. King Booker ("Booker") went to work for the Boeing Company, d/b/a Boeing-Oak Ridge Company ("Boeing"), as an hourly employee in 1982. In 1989, she was promoted to a salaried managerial position in "Supply Chain Management" and has remained in essentially the same position ever since. In 1997, she discovered that she was being paid less than her male peers. On August 10, 1998, Booker filed an internal equal employment opportunity ("EEO") complaint.

Lacking satisfactory resolution, on July 2, 1999, Booker filed a complaint with the federal Equal Employment Opportunity Commission ("EEOC"). On May 1, 2001, Booker filed this lawsuit in Anderson County Chancery Court seeking relief under the Tennessee Human Rights Act, Tennessee Code Annotated sections 4-21-101 to -1004 (2005) ("THRA"), including backpay to 1989.

The case was removed to the Federal District Court for the Eastern District of Tennessee. Among the disputed issues before that court is whether the THRA's statute of limitations permits Booker to recover backpay to 1989, when she became a manager, or only to 2000, one year prior to the date she filed her lawsuit.

To aid in resolving the dispute, the district court certified the following question to this Court:

> Whether a discriminatory salary "ceases" within the plain meaning of the Tennessee Human Rights Act's statute of limitations when it ends, or whether it "ceases" when the alleged discriminatory act should trigger an employee's awareness of a duty to assert his or her rights.

We accepted the certified question.

## Analysis

The THRA's statute of limitations provides, "[a] civil cause of action under this section shall be filed in chancery court or circuit court within one (1) year after the alleged discriminatory practice ceases . . . ." Tenn. Code Ann. § 4-21-311(d) (2005). Booker argues that the "alleged discriminatory practice" in this case, unequal pay based on gender, began in 1989 and had not yet ceased as of the time she filed her lawsuit. Thus, Booker argues that the THRA permits her to recover backpay to 1989. Boeing argues that each unequal paycheck Booker received was a separate and discrete discriminatory act such that Booker may only recover backpay for paychecks received within one year of the date she filed suit.

We note at the outset that the certified question as articulated by the district court does not capture the full dispute between the parties regarding the THRA's statute of limitations. The question as certified essentially asks whether a plaintiff's relief may be limited if she fails to file suit upon learning of a discriminatory practice, even though the discriminatory practice may not yet have "ceased." In other words, must a plaintiff file her suit within one year of her discovery of an allegedly discriminatory practice to recover damages for the entire practice, or does she have until one year after the discriminatory practice ceases? In this case, Booker became aware of the pay disparity in 1997 but did not file her suit until 2001. If the discovery rule operates to make her suit for relief to 1989 untimely, she would be limited to seeking relief for only the year prior to the date she filed suit.

-2-

The question as certified assumes that pursuant to the "continuing violation" doctrine, unequal pay is a single discriminatory practice under the THRA rather than a series of discrete discriminatory acts. Boeing argues, however, that in light of recent federal case law this Court should hold that the continuing violation doctrine is inapplicable to pay discrimination cases. Therefore, Boeing argues that under no circumstances should Booker be permitted to seek backpay for any period longer than one year prior to the date she filed suit. Booker argues that this Court should modify the continuing violation doctrine, but that it should hold that it is applicable to pay discrimination claims.

*Continuing Violation Doctrine*

The continuing violation doctrine essentially allows a plaintiff to bring a claim for discriminatory conduct that occurs outside the limitations period if the discriminatory conduct is sufficiently related to conduct occurring within the limitations period. Spicer v. Beaman Bottling Co., 937 S.W.2d 884, 889 (Tenn. 1996). The doctrine affects both the jurisdiction of a court to hear a charge of discrimination and the remedies the court may impose; it allows a court to assert jurisdiction over a charge of discrimination occurring outside the limitations period and also permits the court to fashion a remedy extending beyond the limitations period. Gandy v. Sullivan County, 24 F.3d 861, 864 (6th Cir. 1994); see also Thelma A. Crivens, The Continuing Violation Theory and Systemic Discrimination: In Search of a Judicial Standard for Timely Filing, 41 Vand. L. Rev. 1171, 1172 (1988). In the context of an unequal pay claim, the continuing violation doctrine would operate to "link" all related instances of unequal pay into a single practice, such that a suit for unequal pay could seek redress and backpay for all the violations, including those that occurred outside the limitations period.

The continuing violation doctrine was developed by federal courts interpreting federal anti-discrimination statutes, particularly Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"). See, e.g., Berry v. Bd. of Supervisors of L.S.U., 715 F.2d 971, 979 (5th Cir. 1983). Because "the stated purpose and intent of the [THRA] is to provide for execution within Tennessee of the policies embodied in the federal anti-discrimination acts," Spicer, 937 S.W.2d at 888 (citing Tenn. Code Ann. § 4-21-101(a)(1) (1991 Repl.)), this Court approved the continuing violation doctrine in Spicer. We observed in Spicer that

> Courts have recognized . . . only two narrowly limited instances in which the continuing violation doctrine applies. The first category arises where there is some evidence of *present* discriminatory activity giving rise to a claim of a continuing violation, for example where an employer continues to presently impose disparate work assignment[s] or pay rates between similarly situated employee groups. Key to establishing this exception is proof that at least one of the forbidden discriminatory acts occurred within the relevant limitations period.

The second category of "continuing violation" arises where there has been a longstanding and demonstrable policy of discrimination such as an established and repeated pattern of paying men more than women. To constitute such an established pattern, the plaintiff must clearly demonstrate some "overarching policy of discrimination," and not merely the occurrence of an isolated incident of discriminatory conduct.

Spicer at 889-90 (citations and footnotes omitted; emphasis added).

As these examples illustrate, perhaps the most important factor supporting use of the continuing violation doctrine in employment discrimination cases is the fact that "many discriminatory acts cannot be viewed as discrete incidents, and often unfold rather than occur, making it difficult to precisely pinpoint the time when they take place." Id. at 889 (citation omitted). As this statement implicitly recognized, the doctrine does not apply to "discrete incidents" or individual acts of discrimination. Rather, the continuing violation doctrine applies when the discriminatory acts take place over time.

Noting that "application of the continuing violation doctrine is not always clear and simple," id. at 889, we adopted the doctrine as articulated by the Fifth Circuit in Berry. Spicer, 937 S.W.2d at 890. The Berry formulation, which was the majority rule at the time we decided Spicer, looks to three factors to determine whether the alleged discriminatory acts are a series of individual violations or are part of a single continuing violation. The first factor is whether "'the alleged acts involve the same type of discrimination, tending to connect them . . . .'" Spicer, 937 S.W.2d at 890 (quoting Berry, 715 F.2d at 981). The second factor is "'frequency,'" considering whether the alleged acts are "'recurring (e.g., a bi-weekly paycheck) or more in the nature of an isolated work assignment or employment decision[.]'" Id. (emphasis added). The third factor is "'degree of permanence.'" This factor asks whether the "'act ha[s] the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights . . . .'" Id.[1] It is the interplay of this third factor with the plain language of the THRA's statute of limitations that the district court's certified question seeks to clarify. That is, is a suit only timely once the plaintiff should be aware of her rights, as provided in the Berry rule, or is the suit timely as long as the discriminatory practice has not yet "cease[d]," as provided in the THRA's statute of limitations, Tennessee Code Annotated section 4-21-311(d)?

---

[1] Although we approved the continuing violation doctrine in Spicer, we held that the plaintiff in that case could not invoke it because the evidence did not show that any instances of discrimination had occurred within the one-year limitations period. Id. at 890-91.

As originally enacted, the THRA did not contain a statute of limitations.  See 1978 Tenn. Pub. Acts, ch. 748, § 2.  Courts applied to THRA claims the one-year statute of limitations for "[c]ivil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes" set forth in Tennessee Code Annotated section 28-3-104(a)(3).  See Spicer, 937 S.W.2d at 890 n.6; see also Bennett v. Steiner-Liff Iron & Metal Co., 826 S.W.2d 119, 121 (Tenn. 1992).  In 1992, the General Assembly amended the THRA to add a statute of limitations.  1992 Tenn. Pub. Acts, ch. 1027, § 8.  The statute states that suits must be filed "within one (1) year after the alleged discriminatory practice ceases . . . ."  Tenn. Code Ann. § 4-21-311(d).

We noted in Spicer that the THRA's then-newly-enacted statute of limitations "apparently incorporates the continuing violation exception . . . .'"  Spicer, 937 S.W.2d at 890 n.6.  Thus, our holding in Spicer that the continuing violation doctrine is applicable to claims brought under the THRA was of limited import for claims brought after the effective date of the legislation creating the THRA's statute of limitations, because we recognized that the Legislature intended to make the continuing violation doctrine available to claims brought after that date.  We reiterated in Weber v. Moses, 938 S.W.2d 387 (Tenn. 1996), that "[t]he [THRA] statute of limitations . . . adopts the 'continuing violation exception' which we judicially adopted and explained fully in Spicer."  Id. at 391 n.4

Shortly after our decision in Spicer, we addressed the proper framework for analyzing the THRA's new statute of limitations in Weber.  In Weber, the plaintiff alleged that he was terminated from his job because he refused to follow his employer's racially-discriminatory hiring policy.  The plaintiff was orally informed of the termination in early August of 1992, the termination was effective on August 31, 1992, and the plaintiff received written notice of termination on or after September 1, 1992.  The plaintiff filed suit on August 31, 1993.  938 S.W.2d at 388-89.

We held that because the statute of limitations directs that suits be filed within one year of when the "alleged discriminatory practice ceases . . . we must first identify the alleged discriminatory practice."  Id. at 390.  The Court identified the discriminatory practice in Weber as the decision to terminate the plaintiff, rather than the termination itself.  Therefore, the Court stated that the next step was to "determine the date on which the discriminatory practice ended," or ceased.  Id.  The plaintiff argued that the discriminatory practice did not cease until he received written notice of his termination, on or after September 1, 1992.  The defendant employer argued that the discriminatory practice ended on the date in early August when the plaintiff was orally advised of the decision to terminate his employment.

The Court agreed with the employer and held that the suit was barred by the one-year statute of limitations.  Looking to analogous cases decided under federal law, we emphasized that "a discriminatory termination ceases and is complete[] when the plaintiff is given unequivocal notice of the employer's termination decision, even if employment does not cease until a designated date in the future."  Id. at 391-92.  We explained that, "'the proper focus is on the time of the

*discriminatory act* not the point at which the *consequences* of the act become painful.'" Id. at 391 (quoting Chardon v. Fernandez, 454 U.S. 6, 8 (1981)). Weber was consistent with Spicer's recognition that the continuing violation doctrine does not apply to discrete acts. Where the alleged discriminatory practice is a discrete act, such as the decision to terminate an employee, the continuing violation doctrine is inapplicable to extend the THRA's statute of limitations. A discrete discriminatory act "ceases" as of the time it occurs, not as of the time the consequences of the act cease.

*The United States Supreme Court's Morgan Decision*

In 2002, the United States Supreme Court clarified that under federal law, the continuing violation doctrine is likewise not applicable to extend Title VII's statute of limitations where a plaintiff alleges "discrete incidents" of discrimination. In National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the plaintiff alleged that he had been subjected to discrete acts of discrimination and retaliation based on race in violation of Title VII. He also alleged that he had been subjected to a racially hostile work environment in violation of Title VII. Id. at 104. Many of the discriminatory acts alleged in the plaintiff's complaint occurred outside Title VII's 300-day limitations period for filing a charge. The Ninth Circuit Court of Appeals held that pursuant to the continuing violation doctrine, the plaintiff could "sue on claims that would ordinarily be time barred so long as they either are 'sufficiently related' to incidents that fall within the statutory period or are part of a systematic policy or practice of discrimination that took place, at least in part, within the limitations period." Id. at 105.

The Supreme Court reversed in part and affirmed in part. The Court did not explicitly approve or disapprove the use of the continuing violation doctrine. Rather, relying on Title VII's prohibition of unlawful employment "practices," the Court drew a distinction between hostile environment claims, which are "a series of separate acts that collectively constitute one 'unlawful employment practice,'" and "discrete acts" of discrimination, which constitute a single, identifiable prohibited "practice." Id. at 114-17.

The Court explained that in the case of hostile environment claims, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Id. at 117. The Court explained that hostile environment claims "are different" because "[t]heir very nature involves repeated conduct." Id. at 115. The Court therefore reasoned that,

> A hostile work environment claim is composed of a series of separate
> acts that collectively constitute one "unlawful employment practice."
> 42 U.S.C. § 2000e-5(e)(1). The timely filing provision only requires
> that a Title VII plaintiff file a charge within a certain number of days
> after the unlawful practice happened. It does not matter, for purposes
> of the statute, that some of the component acts of the hostile work
> environment fall outside the statutory time period. Provided that an

> act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

Id. at 117. In other words, a hostile environment claim is not made timely by linking the "component acts" together through the continuing violation doctrine. Rather, the hostile environment constitutes one unified, unlawful employment practice, and filing is timely as long as some act contributing to the hostile environment occurs within the limitations period.

In contrast, the Court held that where the alleged discriminatory practice is a "[d]iscrete act[]" such as termination, failure to promote, denial of transfer, or refusal to hire," each alleged act of discrimination must be evaluated independently to determine whether it occurred within the limitations period. Id. at 114. The Court did not define a "discrete discriminatory act" beyond offering examples of what might be a discrete act. The Court also explained, in response to the plaintiff's argument that Title VII's use of the term "practice" envisions an ongoing course of conduct rather than a discrete act,

> We have repeatedly interpreted the term "practice" to apply to a discrete act or single "occurrence," even when it has a connection to other acts. For example . . . in Bazemore v. Friday, 478 U.S. 385 (1986) (per curiam), a pattern-or- practice case, when considering a discriminatory salary structure, the Court noted that although the salary discrimination began prior to the date that the act was actionable under Title VII, "[e]ach week's paycheck that deliver[ed] less to a black than to a similarly situated white is a wrong actionable under Title VII . . . ." Id. at 395.

Id. at 111-12. In sum, Morgan essentially rendered the continuing violation doctrine irrelevant to claims under federal discrimination law, dividing the universe of discriminatory practices into hostile environment claims and discrete acts of discrimination.[2]

Since Morgan, a number of federal courts have held that pay discrimination claims involve "discrete acts" of discrimination such that plaintiffs are limited to recovering damages for only the discriminatory acts occurring within the limitations period. See, e.g., Ledbetter v. Goodyear Tire & Rubber Co., 421 F.3d 1169, 1182-83 (11th Cir. 2005) (each discriminatory decision setting pay is a discrete act); Hildebrandt v. Ill. Dep't of Natural Res., 347 F.3d 1014, 1027 (7th Cir. 2003) (each discriminatory paycheck is a discrete act). Indeed, some federal courts so held before the Morgan decision. See, e.g., Pollis v. New Sch. for Soc. Research, 132 F.3d 115, 119 (2d Cir. 1997) ("a claim of discriminatory pay is fundamentally unlike other claims of ongoing discriminatory treatment

---

[2] Morgan did, however, save the question of what effect its holding would have on pattern-and-practice claims, noting that "none are at issue here." 536 U.S. at 115 n.9. Likewise, Booker does not allege a pattern-or-practice claim.

because it involves a series of discrete, individual wrongs rather than a single and indivisible course of wrongful action.").

Because it essentially eliminated the continuing violation doctrine, <u>Morgan</u> is of limited use to us in interpreting the THRA, since the THRA's statute of limitations incorporates the continuing violation exception. Tenn. Code Ann. § 4-21-311(d); <u>Spicer</u>, 937 S.W.2d at 890 n.6. <u>Morgan</u>'s holding does not change the plain language of the THRA's statute of limitations. As we have observed, however, we have previously determined that, like Title VII's statute of limitations, the THRA's statute of limitations does not operate to extend the limitations period on discrete acts of discrimination. <u>Weber</u>, 938 S.W.2d at 391-92. The question we must resolve, therefore, is whether, under Tennessee law, pay discrimination is a series of discrete acts, or whether it is a continuing discriminatory practice that is actionable until it ceases.

*Is Discriminatory Pay a Continuing Violation under the THRA?*

Boeing argues that because the THRA is meant to conform to Title VII, this Court should adopt the federal courts' reasoning that discriminatory pay is not a continuing violation. Booker argues that although Tennessee courts use federal civil rights law as a guide, this Court is not bound by federal civil rights law where the language of the THRA compels a different result. Specifically, Booker argues that because the THRA's statute of limitations provides that suits must be filed within one year of when the "alleged discriminatory practice <u>ceases</u>," Tenn. Code Ann. § 4-21-311(d) (emphasis added), we should not adopt the federal courts' severe restriction of the continuing violation doctrine.

Although Boeing is correct that the purpose of the THRA is to "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts," Tenn. Code Ann. § 4-21-101(a)(1) (2005), as we have discussed, "we are neither bound by nor restricted by the federal law when interpreting our own anti-discrimination laws." <u>Barnes v. Goodyear Tire & Rubber Co.</u>, 48 S.W.3d 698, 705 (Tenn. 2000); <u>see also</u> <u>Phillips v. Interstate Hotels Corp. No. L07</u>, 974 S.W.2d 680, 683-84 (Tenn. 1998) (same). Therefore, we will not apply the reasoning and conclusions of federal civil rights decisions where doing so would conflict with the THRA. At least one other state court has declined to follow <u>Morgan</u> strictly where plaintiffs allege claims under state laws prohibiting discrimination. <u>See, e.g.</u>, <u>Yanowitz v. L'Oreal, USA, Inc.</u>, 36 Cal. 4th 1028, 1057 (2005) (declining to apply <u>Morgan</u> to state-law retaliation claim because doing so "would mark a significant departure from the reasoning and underlying policy rationale of our previous cases").

Moreover, the THRA's statute of limitations is fundamentally different than Title VII's statute of limitations. Title VII provides that a charge of discrimination must be filed within a set period "after the alleged unlawful employment practice <u>occurred</u>." 42 U.S.C. 2000e-5(e)(1) (emphasis added). The THRA provides that a suit must be filed "within one (1) year after the alleged discriminatory practice <u>ceases</u>." Tenn. Code Ann. § 4-21-311(d) (emphasis added). Boeing argues that the difference between the words "occurred" and "ceases" is immaterial, arguing that any practice that has already "occurred" must by definition have "ceased." However, Boeing's argument

-8-

ignores the fact that "cease" and "occurred" have entirely different meanings. To "cease" means "to bring or come to an end; stop; discontinue." Webster's New World Dictionary (2d ed. 1980). "Occurred," on the other hand, means "to take place; happen." Id. Thus, "occurred" connotes and contemplates a single instance, whereas "ceases" connotes and contemplates an ongoing course of conduct. In stating that a claim must be brought within one year of the time a practice "ceases," as we have explained, the Legislature incorporated the continuing violation exception into the statute of limitations. Therefore, rather than accepting the federal courts' limitation on the continuing violation doctrine, we must conduct our own analysis.

Boeing argues that pay discrimination is not a continuing violation because each payment is a discrete discriminatory act that "ceased" at the time the payment was made. In our view, however, a discriminatory pay rate is not a discrete act in the same sense that a termination or a denial of promotion is a discrete act. Something is "discrete" if it is "separate and distinct; not attached to others; unrelated." Id. Payments of a salary are not "distinct or unconnected." Rather, they are part of an ongoing course of conduct. We do not hold that a single discriminatory paycheck does not constitute a discriminatory act. It does. But in our view, a discriminatory pay rate, whether it occurs for two weeks, two years, or more, constitutes precisely the type of continuing violation envisioned by the Legislature in enacting the THRA's statute of limitations. Indeed, we recognized as much in Spicer when we cited as an example of a continuing violation, "an employer [who] continues to presently impose disparate work assignment or pay rates." 937 S.W.2d at 889 (emphasis added). A discriminatory pay rate is actionable until it "ceases." It does not cease each time an employee receives a paycheck. Rather, it ceases when the employer brings the employee into parity with his or her peers.

Under the continuing violation doctrine as adopted in Spicer, a plaintiff must bring suit when the discriminatory "'act ha[s] the degree of permanence which should trigger [the] employee's awareness of and duty to assert his or her rights . . . .'" Spicer, 937 S.W.2d at 890 (quoting Berry, 715 F.2d at 981). If this "discovery rule" applies to pay discrimination claims, then it would not matter, for purposes of the statute of limitations, whether the discriminatory conduct had "ceased" or not. Once the discriminatory pay rate had "trigger[ed]" the employee's awareness of a duty to assert his or her rights, then the statute would be tolled. We agree with Booker that this rule is incompatible with the plain language of the THRA. A discriminatory pay rate "ceases" when it ends, not when the employee's awareness of it should alert him or her to assert his or her rights.

We overrule Spicer to the extent that it imposed a "discovery rule" on continuing violation claims. However, we note that employers may still invoke equitable doctrines such as laches and estoppel to limit claims in cases where an employee has slept on his or her rights.

### Conclusion

After considering the applicable authority and the arguments of the parties, we conclude that discriminatory pay is a continuing violation under the THRA. We further conclude that a plaintiff may seek backpay for the duration of the practice, until it "ceases," although equitable doctrines may

bar some or all of the plaintiff's relief.  Costs of the appeal shall be assessed to the appellee, the Boeing Company,  d/b/a Boeing-Oak Ridge Company.


                                           _____

                                           E. RILEY ANDERSON, JUSTICE