IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 4, 2016

**CARLA SUZANNE JACKSON v. CITY OF CLEVELAND**

**Appeal from the Circuit Court for Bradley County
No. V-14-586      Lawrence H. Puckett, Judge**

───────────────────────

**No. E2015-01279-COA-R3-CV-FILED-AUGUST 22, 2016**

───────────────────────

Plaintiff, who had served as a police officer for the City of Cleveland Police Department since 1990, was fired on September 12, 2011, eleven months after filing a charge of discrimination with the Equal Employment Opportunity Commission. Four months after her termination, Plaintiff filed suit in federal court asserting, *inter alia*, claims of sexual discrimination, hostile work environment, and retaliation against the City of Cleveland under the Tennessee Human Rights Act. She asserted that the discriminatory acts continued until January 18, 2012, when she was interviewed by the Tennessee Bureau of Investigation for allegedly filing false timesheets while employed by the Department. All claims in the federal court action were dismissed without prejudice on August 13, 2013. On August 12, 2014, Plaintiff commenced this action in the Circuit Court for Bradley County asserting the same state-law claims. After answering the complaint, the city filed a motion for summary judgment seeking the dismissal of all claims based on the one-year statute of limitations. Plaintiff opposed the motion contending the action was timely filed due to the combined effect of the continuing violation doctrine, *see Booker v. The Boeing Co.*, 188 S.W.3d 639, 649 (Tenn. 2006), and 28 U.S.C. § 1367(d), which suspends the running of the state statute of limitations while a federal suit is pending and for 30 days after dismissal. The trial court dismissed all claims as time-barred upon the finding that they arose from the discrete act of terminating Plaintiff's employment in September 2011. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II and KENNY W. ARMSTRONG, JJ., joined.

W. Gerald Tidwell, W. Adam Izell, and Todd A. Davis, Chattanooga, Tennessee, for the appellant, Carla Suzanne Jackson.

Ronald D. Wells and Keith H. Grant Chattanooga, Tennessee, for the appellee, City of Cleveland.

## OPINION

Carla Suzanne Jackson ("Plaintiff") began working as a reserve police officer for the City of Cleveland Police Department ("the Department") in 1990. She was hired as a fulltime police officer in 1992. In October 2010, Plaintiff mailed a charge of discrimination to the Equal Employment Opportunity Commission ("EEOC") claiming she was being subjected to sexual discrimination. The Department terminated Plaintiff's employment on September 12, 2011.[1]

On January 24, 2012, Plaintiff filed a complaint in the Federal District Court for the Eastern District of Tennessee ("federal complaint") against the City of Cleveland ("Defendant") claiming she was subjected to repeated retaliatory and discriminatory conduct by other members of the Department. The federal complaint alleged claims under both federal and state law. Subsequently, Plaintiff filed a motion to voluntarily dismiss her federal claims and asked the federal court to remand her state-law claims to state court. The court granted Plaintiff's motion with respect to the federal claims but determined that it could not remand the case to state court because Plaintiff had not previously filed the case in state court. The federal court declined to exercise supplemental jurisdiction over Plaintiff's state-law claims and dismissed the complaint without prejudice on August 13, 2013.

On August 12, 2014, Plaintiff filed a complaint in the Circuit Court of Bradley County, Tennessee ("state complaint") in which she alleged that the Department discriminated against her because of her sex and retaliated against her because she filed a charge with the EEOC.[2] With one exception, every incident referenced in Plaintiff's state complaint occurred before her employment was terminated on September 12, 2011. The lone post-termination incident is addressed in two paragraphs of the state complaint:

19. In retaliation for filing a complaint of sexual harassment with the Equal Employment Opportunity Commission on February 14, 2011, an offense report was prepared by [a lieutenant in the Department] making false and misleading allegations against the plaintiff regarding timesheet and [sic] discrepancies in 2008 and 2009. The plaintiff was never informed

---

[1] The reason for terminating Plaintiff's employment is disputed, but this fact is not material to the dispositive issue on appeal, the statute of limitations defense.

[2] The state complaint is substantially the same as the federal complaint with two exceptions: (1) individual defendants who were sued in the federal complaint were not made parties to the state action and (2) the federal claims were omitted.

of the report and had no knowledge of the report until July 2011 when the plaintiff stumbled on the report by accident. Police department policy states that any employee is to be informed whenever an employee is under an internal affairs investigation . . . .

. . . .

31. Since [Plaintiff's] termination, the [Department] has undertaken to continue an investigation into falsification of timesheets which has no factual basis or truth regarding the allegations of falsification of timesheets two and three years earlier and prior to her complaint. The [Department] undertook a course of action that is retaliatory in nature by requesting that an investigation be conducted and said investigation is being conducted by the department through the use of the Tennessee Bureau of investigation [sic]. [On] January 18, 2012, the plaintiff was interviewed regarding the allegations of falsification of timesheets. The plaintiff alleges that department [sic] is motivated to retaliate against the plaintiff in that out of this motivation the department referred the allegations for further investigation by the District Attorney's office. . . .

After answering the state complaint, Defendant filed a "Motion to Dismiss and/or for Summary Judgment," arguing that Plaintiff's claims accrued on September 12, 2011 and were therefore barred by the one-year statutes of limitations in the Tennessee Human Rights Act ("THRA") and Governmental Tort Liability Act ("GTLA").[3] *See* Tenn. Code Ann. §§ 4-21-311(d), 29-20-305(b). Plaintiff filed responses to the motion, arguing that the Department's conduct amounted to a continuing discriminatory act and that her claims did not accrue until she was interviewed by the TBI on January 18, 2012.

Plaintiff's responses included a letter that the Chief of Police sent to the District Attorney General for the 10th Judicial District. The letter states that Plaintiff submitted several timesheets that were inconsistent with the time she worked and concludes by stating: "In light of the current circumstances surrounding [Plaintiff's] complaints with the City Manager and the EEOC, I [the Chief of Police] am asking that you [the district

---

[3] After Defendant filed its answer and its motion to dismiss, Plaintiff filed a motion to amend her complaint. *See* Tenn. R. Civ. P. 15.01. The amended complaint added a cause of action for interference with business relationships and included additional allegations about the Department's conduct in December 2013. Defendant opposed the motion, and the record does not contain any indication that the trial court granted Plaintiff's motion to amend her complaint. Additionally, Plaintiff has not presented any argument that she was or should have been granted permission to amend her complaint. Consequently, this issue has been waived. *See Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) ("The failure of a party to cite to any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue.").

attorney general] review these timesheets and document evidence for the possibility of a criminal investigation."

The trial court treated Defendant's motion as a motion for summary judgment. Based upon the entire record, the court found that "because Plaintiff's complaint arises from a discreet act of discrimination, her allegedly wrongful and discriminatory discharge from employment, the continuing tort doctrine does not apply to extend the statute of limitations." The court found that Plaintiff's claims were barred by the statute of limitations and granted summary judgment to Defendant. Plaintiff appealed.

## STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Accordingly, this court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When defendants move for summary judgment based on an affirmative defense such as the statute of limitations, they must establish the elements of the affirmative defense before the burden shifts to the nonmovant. *See Carr v. Borchers*, 815 S.W.2d 528, 532 (Tenn. Ct. App. 1991) ("Since . . . a statute of limitations defense is an affirmative defense and no *prima facie* showing of the running of the statute of limitations is made by the record, the burden of establishing that the statute has run is upon the defendant."); *Campbell v. Grand Trunk Western R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001) ("Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run. If the defendant meets this requirement then the burden shifts to the plaintiff to establish an exception to the statute of limitations.").

Once the moving party has made a properly-supported motion, the burden shifts to the nonmoving party to "set forth specific facts *at the summary judgment stage* showing that there is a genuine issue for trial." *Rye*, 477 S.W.3d at 265 (internal quotation marks omitted; emphasis in original). A disputed fact is "material" if it "must be decided in order to resolve the claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

ANALYSIS

Plaintiff asserts claims for discriminatory termination, hostile work environment, retaliation, intentional infliction of emotional distress, negligent infliction of emotional distress, and malicious harassment. Defendant contends that all of these claims are time-barred under the relevant statutes of limitations.

I. STATUTE OF LIMITATIONS

The statute of limitations for claims made pursuant to either the THRA or the GTLA is one year. *See* Tenn. Code Ann. §§ 4-21-311, 29-20-305. The complaint, however, only mentions the THRA. There is no reference to the GTLA. "The substance of any ordinance or regulation relied upon for claim or defense shall be stated in a separate count or paragraph and the ordinance or regulation shall be clearly identified." *See* Tenn. R. Civ. P. 8.05(1). Consequently, we will analyze Plaintiff's claims under the THRA.

Although Defendant is a governmental entity, the broad definition of "employer" in the THRA "evidences a clear legislative intent to place governmental employers in the same standing as private employers" and to "remove whatever immunity a governmental entity may have had under the [GTLA]." *Sneed v. City of Red Bank, Tenn.*, 459 S.W.3d 17, 27 (Tenn. 2014) (quoting *Easton v. Memphis Light, Gas & Water Div.*, 866 S.W.2d 952, 955 (Tenn. Ct. App. 1993)) (internal quotation marks omitted; alteration in original). Under the THRA, plaintiffs must file suit "within one (1) year after the alleged discriminatory practice ceases . . . ." Tenn. Code Ann. § 4-21-311(d). In some situations, Tennessee's general savings statutes provide plaintiffs with additional time to refile a complaint after the dismissal of previous action. *See* Tenn. Code Ann. §§ 28-1-105, -115. However, these general savings statutes are inapplicable to suits against the State or other governmental entities. *See Sneed*, 459 S.W.3d at 28-29 (discussing a "long line" of Tennessee cases holding that "general savings statutes do not apply to suits against the State or other governmental entities unless the statute waving sovereign immunity expressly permits their application."); *Lynn v. City of Jackson*, 63 S.W.3d 332, 337-38 (Tenn. 2001) ("[T]he general rule in Tennessee is that savings statutes may not be applied to extend the period within which an action must be filed under the GTLA."); *Whitmore v. Shelby Cnty. Gov't*, No. W2010-01890-COA-R3-CV, 2011 WL 3558285, at *7 (Tenn. Ct. App. Aug. 15, 2011) ("Absent an express, clear, and unmistakable intent to the contrary, the saving statute cannot be used to extend the period within which to file suit against the County under the THRA.").

The foregoing notwithstanding, certain provisions of federal law can toll the running of the statute of limitations for claims brought against the political subdivisions of a state. 28 U.S.C. § 1367(d); *Jinks v. Richland Cnty., S.C.*, 538 U.S. 456, 465-67 (2003). When federal courts exercise supplemental jurisdiction over a state-law claim, the

relevant limitations period for that claim "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d).

Courts have identified three possible interpretations of 28 U.S.C. § 1367(d). *See Gottschalk v. Woods*, 766 S.E.2d 130, 136-38 (Ga. Ct. App. 2014); *City of Los Angeles v. Cnty. of Kern*, 328 P.3d 56, 65 (Cal. 2014); *In re Vertrue Inc. Mktg. & Sales Practices Litig.*, 719 F.3d 474, 480-81 (6th Cir. 2013). In this case, neither party has made any argument about which interpretation Tennessee should adopt. Instead, both parties have assumed that the approach adopted by the Sixth Circuit, which is called the "suspension approach," is applicable to this case. *See In re Vertrue Inc.*, 719 F.3d at 481. Under that approach, the state statute of limitations is suspended while the federal suit is pending and for 30 days after dismissal. *Id.* After the 30-day period stated in 28 U.S.C. § 1367(d) expires, the remaining portion of the state statute of limitations begins to run again. *See id.*

Of the three possible interpretations of 28 U.S.C. § 1367(d), the suspension approach provides Plaintiff with the most time in which to file the state complaint.[4] However, Plaintiff concedes that the suspension approach alone will not save the state complaint if her claims accrued on September 12, 2011. If Plaintiff's claims accrued on that date, the statute of limitations ran for about four months until Plaintiff filed the federal complaint on January 24, 2012, at which time it was tolled pursuant to 28 U.S.C. § 1367(d). Plaintiff's federal complaint was dismissed on August 13, 2013, at which time approximately eight months remained on the state statute of limitations. Under 28 U.S.C. § 1367(d), the statute of limitations began running again 30 days after the federal complaint was dismissed. Therefore, Plaintiff had approximately nine months from the dismissal of the federal complaint in which to file the state complaint. However, she did not file the state complaint until August 12, 2014, almost twelve months after her federal complaint was dismissed. Therefore, Plaintiff's claims are time-barred under the suspension approach if they accrued on September 12, 2011.

Plaintiff attempts to avoid this result by arguing that her claims did not accrue until January 18, 2012, based on the continuing violation doctrine. The continuing violation doctrine "relieves a plaintiff from the burden of proving that the entire violation occurred within the limitations period." *Spicer v. Beaman Bottling Co.*, 937 S.W.2d 884, 889 (Tenn. 1996), *overruled on other grounds by Booker v. The Boeing Co.*, 188 S.W.3d 639, 649 (Tenn. 2006). Under this doctrine, plaintiffs can bring claims for discriminatory

---

[4] As discussed below, we have concluded that Plaintiff's claims are time-barred even if the suspension approach applies. Because the suspension approach provides Plaintiff with the most time in which to file the state complaint, Plaintiff's claims are also time-barred under the other two approaches to 28 U.S.C. § 1367(d). Therefore, it is not necessary for us to determine which of the three approaches applies in Tennessee state courts.

conduct that occurred outside of the limitations period if that conduct is sufficiently related to conduct that occurred within the limitations period. *Booker*, 188 S.W.3d at 643. The discriminatory conduct is treated as one continuing violation that ends within the limitations period. *See id.* Thus, when plaintiffs demonstrate the existence of a continuing violation, they are "entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Trent v. Anderson*, No. E2009-02064-COA-R3-CV, 2010 WL 3155193, at *4 (Tenn. Ct. App. Aug. 10, 2010) (quoting *Sharpe v. Cureton*, 319 F.3d 259, 266-67 (6th Cir. 2003)).

Our courts have recognized only two situations in which the continuing violation doctrine applies. *Booker*, 188 S.W.3d at 643. The first situation arises when "there has been a longstanding and demonstrable policy of discrimination such as an established and repeated pattern of paying men more than women." *Id.* (quoting *Spicer*, 937 S.W.2d at 889-90). The second situation arises when there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation. *Id.* "Key to establishing this exception is proof that at least one of the forbidden discriminatory acts occurred within the relevant limitations period." *Spicer*, 937 S.W.2d at 889.

The THRA's statute of limitations states that suits must be filed "within one (1) year after the alleged discriminatory practice *ceases* . . . ." Tenn. Code Ann. § 4-21-311(d) (emphasis added). The term "'ceases' connotes and contemplates an ongoing course of conduct." *Booker*, 188 S.W.3d at 648. Thus, by using the word "ceases" the General Assembly incorporated the continuing violation doctrine into the THRA's statute of limitations. *Id.* Continuing violations, such as a discriminatory pay rate, "cease" when the conduct at issue ends. *See id.* In contrast, discrete discriminatory acts cease "as of the time [they] occur[], not as of the time the consequences of the act[s] cease." *Id.* at 645. Consequently, the THRA's statute of limitations "does not operate to extend the limitations period on discrete acts of discrimination." *Id.* at 647.

Historically, Tennessee courts have considered three factors to determine whether a defendant's conduct was a series of discrete acts or a continuing violation. *See id.* at 644 (discussing and quoting *Spicer*, 937 S.W.2d at 890).

> The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (e.g., a bi-weekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued

existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Spicer*, 937 S.W.2d at 890 (quoting *Berry v. Bd. of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir. 1983)). Although *Spicer* indicates that the third factor is "perhaps of most importance," the Tennessee Supreme Court has overruled *Spicer* "to the extent that it imposed a 'discovery rule' on continuing violation claims."[5] *Booker*, 188 S.W.3d at 649. As our Supreme Court stated, continuing violations cease when they end, "not when the employee's awareness of [them] should alert him or her to assert his or her rights." *Id.* at 649.

Plaintiff contends that all of her claims should be connected as a single, continuing violation that did not accrue until January 2012; however, we have determined that each of Plaintiff's claims must be analyzed separately. Although some of the alleged conduct might form the basis for multiple claims (e.g., actions taken in retaliation for filing the EEOC complaint might also contribute to the creation of a hostile work environment), each of the claims has different elements and thus the accrual of each claim must be discussed separately. *See Ferguson v. Middle Tenn. State Univ.*, 451 S.W.3d 375, 382 (Tenn. 2014) (retaliation); *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31-32 (Tenn. 1996) (hostile work environment); Tenn. Code Ann. § 4-21-401(a)(1) (discriminatory termination).

## A. NOTICE OF TERMINATION – A DISCRETE ACT

A claim based on the termination of one's employment is a claim based on a discrete act. *See Booker*, 188 S.W.3d at 645 ("Where the alleged discriminatory practice is a discrete act, *such as the decision to terminate an employee*, the continuing violation doctrine is inapplicable to extend the THRA's statute of limitations." (emphasis added)). Termination of employment occurs "when the plaintiff is given unequivocal notice of the employer's termination decision, even if employment does not cease until a designated date in the future." *Id.* (quoting *Weber v. Moses*, 938 S.W.2d 387, 391-92 (Tenn. 1996)).

Here, it is undisputed that the last possible date on which Plaintiff could have been given "unequivocal notice" of her employer's termination decision was September 12, 2011, the date her employment terminated. *See id.* Consequently, the statute of limitations for claims based on Plaintiff's termination began to run on September 12, 2011. As discussed above, Plaintiff's claims are time-barred if they accrued on that date.

---

[5] Consequently, it appears that the "degree of permanence" is no longer a significant part of continuing-violation analysis. *See Booker*, 188 S.W.3d at 648-49.

## B. HOSTILE WORK ENVIRONMENT

Hostile work environment claims are based on conduct that "has the purpose or effect of unreasonably interfering with an individual's *work performance* or creating an intimidating, hostile, or offensive *working environment*." *See Bazemore v. Performance Food Grp., Inc.*, 478 S.W.3d 628, 635-36 (Tenn. Ct. App. 2015) (emphasis added) (quoting *Campbell v. Fla. Steel Corp.*, 919 S.W.2d at 31), *perm. app. denied* (Tenn. Nov. 24, 2015). The discriminatory conduct that creates a hostile work environment necessarily ceases to create such an environment when a plaintiff's employment ends. *See id.*

Plaintiff's employment ended on September 12, 2011. Thus, Defendant's conduct could not have interfered with Plaintiff's work performance or created an intimidating work environment for her after that date. *See id.* Consequently, Plaintiff's hostile work environment accrued on September 12, 2011, and based on that date, this claim is time-barred.

## C. RETALIATION

Under the THRA, it is a discriminatory practice for "a person or for two (2) or more persons" to:

> Retaliate or discriminate *in any manner* against a person because such person has opposed a practice declared discriminatory by this chapter or because such person has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this chapter

Tenn. Code Ann. § 4-21-301(a)(1) (emphasis added). The term "person" includes, among other entities, "individuals, governments, [and] governmental agencies . . . ." *See* Tenn. Code Ann. § 4-21-102(14).

The words "in any manner" in the statute indicate that plaintiffs need not prove that an adverse action affected their employment. *See Allen v. McPhee*, 240 S.W.3d 803, 820 (Tenn. 2007), *abrogated on other grounds by Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777, 783-85 (Tenn. 2010). Thus, employers may be held liable for retaliatory actions that are not employment decisions. *See id.* In order establish a prima facie case of retaliation under the THRA, plaintiffs must prove (1) that they engaged in activity protected by the THRA; (2) that the employer knew about the protected activity; (3) that the employer subsequently took a materially adverse action against the plaintiff; and (4) a causal connection between the plaintiff's protected activity and the resulting adverse action. *See Ferguson*, 451 S.W.3d at 382.

Although Plaintiff has alleged that the Department committed a number of retaliatory acts, the only act that occurred after September 2011 was the TBI interview in January 2012. Consequently, in order for Plaintiff's retaliation claim to survive, the Department's pre-termination conduct must be linked with the post-termination investigation. *See Booker*, 188 S.W.3d at 643. Regarding the investigation, Defendant does not dispute that one of the Department's employees sent a letter requesting that the district attorney review Plaintiff's timesheets for the possibility of a criminal investigation "[i]n light of the current circumstances surrounding [Plaintiff's] complaints with the City Manager and the EEOC . . . ." It is also undisputed that the TBI conducted an investigation that involved interviewing Plaintiff on January 18, 2012.

In some situations, an investigation may constitute a continuing violation. *See, e.g.*, *Levy v. Pappas*, 510 F.3d 755, 763 (7th Cir. 2007) (noting in dicta that for purposes of a claim under 42 U.S.C. § 1983 "[a]n ongoing criminal investigation is less like a singular event, such as being fired from a job or being beaten by a police officer, than it is like being denied medical treatment, or suffering from a hostile environment, or being maliciously prosecuted over an extended period of time."), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010). However, it is important to be specific about the alleged discriminatory conduct that is at issue. *See Booker*, 188 S.W.3d at 645 ("[W]e must first identify the alleged discriminatory practice.") (quoting *Weber*, 938 S.W.2d at 390).

In this case, it is undisputed that the Department was not conducting the investigation that was ongoing as of January 2012. Instead, the TBI conducted that investigation. Plaintiff herself alleged that Defendant "request[ed] that an investigation be conducted . . ." and that the investigation was conducted by the TBI. According to Plaintiff, Defendant's conduct consisted of making false allegations and referring those allegations to the district attorney general for investigation. Neither the Department nor Defendant had any authority to require the district attorney to investigate. Moreover, neither of them could independently ask the TBI to conduct the investigation. *See* Tenn. Code Ann. § 38-6-102(a) ("The director [of the TBI], *upon the request of the district attorney general of any judicial district*, may assign the criminal investigators to aid that district attorney general in the investigation of any crime committed in the district attorney general's judicial district, *but only when the district attorney general requests such aid*.") (emphasis added).

Under the facts of this case, the act of requesting the investigation was not a recurring act like a bi-weekly paycheck. *See Booker*, 188 S.W.3d at 644. Requesting an investigation was more akin to an isolated decision—a discrete act—than an ongoing course of conduct. As a result, the TBI investigation is a consequence of the Department's request rather than a continuation of any conduct by the Department or Defendant. *See id.* at 645.

- 10 -

Discrete discriminatory acts cease as of the time they occur, not as of the time the consequences of the acts cease. *See id.* Because the Department's conduct (i.e., the request for an investigation) is a discrete act, the continuing violation doctrine does not allow Plaintiff to link the Department's conduct to the TBI investigation and interview.[6] Aside from the TBI interview, the last retaliatory act alleged in the complaint occurred on September 12, 2011. Consequently, Plaintiff's retaliation claim accrued, at the latest, on that date, not January 18, 2012.

## II. PLAINTIFF'S OTHER CLAIMS

Plaintiff also asserted claims of intentional infliction of emotional distress and negligent infliction of emotional distress.[7] These claims are based on the same conduct that forms the basis of Plaintiff's other claims. Because Plaintiff's other claims are time-barred, her claims for negligent and intentional infliction of emotional distress are time-barred as well.

Additionally, Plaintiff asserted a claim of malicious harassment. The THRA provides plaintiffs with a cause of action for "malicious harassment." Tenn. Code Ann. § 4-21-701(a). Neither "malicious" nor "harassment" is defined in the THRA. *See Washington v. Robertson Cnty.*, 29 S.W.3d 466, 471 (Tenn. 2000). After reviewing the legislative history of this section, our Supreme Court concluded that a claim of malicious harassment requires a plaintiff to demonstrate (1) that the defendant acted maliciously from "ill-will, hatred or spite" and (2) that the defendant "unlawfully intimidated another from the free exercise or enjoyment of a constitutional right by injuring or threatening to injury or coercing another person or by damaging, destroying or defacing any real or personal property of another person." *Id.* at 473.

In addition to these elements, plaintiffs must also prove that the defendant was motivated by the plaintiff's race, color, religion, ancestry, or national origin. *See Bowman v. City of Memphis*, 329 S.W.3d 766, 768-69 (Tenn. Ct. App. 2004). Notably, this list does not include motivation based on the plaintiff's sex, and this court has previously declined to expand the definition of "malicious harassment" to include such claims. *See*

---

[6] Because the continuing violation doctrine does not apply to the request to conduct an investigation, the discovery rule may apply. *See Booker*, 188 S.W.3d at 648-49; *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 457-59 (Tenn. 2012) (discussing the discovery rule). However, Plaintiff has not made any argument about the discovery rule. Consequently, that issue has been waived. *See Newcomb*, 222 S.W.3d at 401.

[7] One of the headings in Plaintiff's complaint references a claim for reckless infliction of emotional distress. Intentional infliction of emotional distress can be proved by a showing of reckless behavior. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 n.6 (Tenn. 2012). Consequently, reckless infliction of emotional distress is not a separate tort from intentional infliction of emotional distress. *See id.*

*Levy v. Franks*, 159 S.W.3d 66, 81 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. Dec. 6, 2004); *Surber v. Cannon*, No. M1998-00928-COA-R3-CV, 2001 WL 120735, at \*5 (Tenn. Ct. App. Feb. 14, 2001).

Here, Plaintiff alleged that discrimination occurred based on her sex, and she has not identified any facts indicating that the Department's employees were motivated by her race, color, religion, ancestry, or national origin. Thus, this claim could have been dismissed on this ground in addition to the fact it was time-barred.

### III. THE POSSIBILITY OF NEW, DISCOVERABLE EVIDENCE

Plaintiff contends that her claims should not have been dismissed because "there is the possibility of new, discoverable discriminatory behavior on the part of [Defendant] related to the TBI investigation." This argument is not persuasive. Summary judgment is appropriate when "the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial." *Rye*, 477 S.W.3d at 265 (emphasis in original). When faced with a motion for summary judgment, nonmovants may request additional time for discovery by "submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998) (quoting *Byrd*, 847 S.W.2d at 215 n.6). The record does not contain such an affidavit.

Moreover, Plaintiff had ample time to investigate her case because her federal complaint was pending for nearly 18 months before it was dismissed. Indeed, the record reveals that Plaintiff obtained a copy of the TBI's file about the timesheet investigation before her federal complaint was dismissed. One of Plaintiff's responses to Defendant's motion for summary judgment states that: "Since appearing in court Monday, counsel discovered that *prior to the dismissal of the federal lawsuit* the TBI investigation file on the Plaintiff was acquired by counsel." (Emphasis added).

For the foregoing reasons, we affirm the dismissal of all claims.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Carla Suzanne Jackson.

_____
FRANK G. CLEMENT, JR., JUDGE